# In the United States Court of Federal Claims

No. 18-47C

(E-Filed: December 1, 2021)

|  |  |
|---|---|
| BRITTANY SPELLERS, | ) |
|  | ) |
| Plaintiff, | ) Motion for Summary |
|  | ) Judgment; RCFC 56; Equal |
| v. | ) Pay Act; 29 U.S.C. § 206(d); |
|  | ) Affirmative Defense. |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

Louise E. Ryder, Washington, DC, for plaintiff.

Ashley Akers, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

On January 9, 2018, plaintiff filed a two-count complaint alleging that the United States Department of the Navy discriminated against her "based on gender," and "seeks equal pay, back pay, liquidated damages, and other relief available under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) et seq." (EPA). ECF No. 1 at 1. On May 4, 2020, defendant filed a motion for summary judgment and for partial dismissal. See ECF No. 32 (defendant's motion). The court issued an opinion and order on November 6, 2020, in which it denied defendant's motion for summary judgment on the first count of plaintiff's complaint, but dismissed for lack of subject matter jurisdiction the second count of plaintiff's complaint. See ECF No. 41 (opinion and order); ECF No. 42 (entry of partial judgment pursuant to Rule 54(b) of the Rules of the United States Court of

Federal Claims (RCFC) with regard the second count of plaintiff's complaint). Accordingly, plaintiff's first count for violation of the EPA remains pending before the court.

After conducting additional discovery, defendant filed a renewed motion for summary judgment pursuant to RCFC 56 on June 23, 2021. See ECF No. 56. Plaintiff filed a response to the motion on July 28, 2021, ECF No. 59, and, defendant filed its reply on August 10, 2021, ECF No. 60.

The motion is now fully briefed, and ripe for decision. The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, defendant's motion is **GRANTED**.

I.   Background[1]

At the time plaintiff filed her complaint on January 9, 2018, she had been employed by the "Naval Air Warfare Command [NAVAIR], at the Atlantic Test Range, Patuxent Naval Air Station, Maryland, since January 9, 2006." ECF No. 1 at 1. She alleges that the claims in her complaint accrued "on January 10, 2016, the effective date of [plaintiff's] annual performance-based pay increase which could have, but did not, place her at a pay level equal to that of her male . . . co-workers within the Telemetry Systems Branch who report to the same supervisory chain and perform substantially equivalent duties." Id. at 3.

Plaintiff was initially hired by the Navy "as a [s]ummer intern while pursuing an undergraduate degree in computer science." Id. She was hired as a full-time employee on June 24, 2007. See id. at 3-4. "Since 2006, [p]laintiff has provided Real-time Telemetry Processing System (RTPS) support for the Interactive Analysis and Display System (IADS) software application suite for all aircraft programs conducting flight test events at the Atlantic Test Ranges (ATR)." Id. at 4. Plaintiff alleges that she "is instrumental in ensuring safe flight operations by providing efficient resolutions to software issues that arise and thoroughly testing the software for production." Id.

Plaintiff continued to progress professionally in the following years, including joining the Engineer Scientist Development Program in 2007. See id. And on May 20, 2010, she "graduated with a [m]aster's degree in [e]ngineering specializing in project management from the University of Maryland, College Park." Id.

---

[1]   The factual background of plaintiff's complaint remains, for the most part, the same as in the court's November 6, 2020 opinion and order. See ECF No. 41 at 2-5. The relevant facts are repeated here for ease of reference.

In April 2011, plaintiff and her coworkers were transitioned to a new personnel management system—"the NAVAIR Science and Technology Reinvention Laboratory [STRL] Personnel Management Demonstration Project." Id. at 5.  This was "a new performance system, under which [p]laintiff was re-classified as a DP-1550 Scientist at Pay Band 3 (GS-11 equivalent)." Id.  In August 2011, plaintiff's supervisor, Mr. Michael VanMeter, informed her "that she was 'way behind salary-wise which caused a flag in the system,' causing her promotion to DP-1550-4 (GS-12 equivalent) to be delayed." Id.  Her promotion was processed thereafter.  See id.

Plaintiff alleges that she is not being fairly paid as compared to three specific, male co-workers:  Spencer Quade, Matthew Menard, and Gerald Berry.  See id. at 6.  "Each of these male co-workers is identically classified as a DP1550-4 computer scientist, yet have been compensated at the GS-13 equivalent level within the pay band DP-4 since the conversion to STRL if not earlier." Id.

Plaintiff did not receive a pay increase in January 2012 "due to the 19% increase she had received in August 2011 which was intended to help her 'catch up' to her peers." Id.  In an effort to demonstrate that she deserved further promotion, plaintiff "requested additional and more challenging duties beyond the IADS software support that were her primary duties." Id. at 7.  According to plaintiff, "she began to develop and test software applications to help personnel working on Post Flight efforts," and she "continued to apply her [e]ngineering project management degree on work in support of the CH-53K aircraft program." Id.

In late 2013, Mr. VanMeter asked plaintiff to take on shared responsibility for the role of IADS Lead with two other co-workers, but plaintiff contends that "the responsibility for IADS fell primarily on her." Id. at 8.  Plaintiff describes her duties as IADS Lead, as follows:

> As Lead for the IADS software application at the ATR facility, [p]laintiff delegates the workload in regards to IADS whether it is pre-mission, real-time and post mission, among a group of DP-1550 Scientists within the Telemetry Software Section (5.2.4.3.3).  For new IADS releases, she performs software integration and functionality tests in a developmental environment before coordinating with other airfield sites for deployment to production for RTPS missions at ATR.  Reporting to upper management, she documents weekly status updates for the section lead of the Telemetry Software Section, and a dedicated portion regarding IADS Testing and Issues/Resolutions.  She participates in weekly Branch meetings to discuss any IADS and aircraft project related information.

Id.

Plaintiff's workload changed again in 2015, when her "workload increased greatly" as a result of personnel changes within IADS. Id. at 9. According to plaintiff, "[t]he majority of IADS efforts currently fall on [her], along with the other tasks she is now assigned by Mr. Quade," and she "continued to serve as the Telemetry Systems Branch (5.2.4.3) SharePoint Lead." Id. She alleges that:

> [c]ompared to her male co-workers in her section, she is carrying a significantly heavier workload, and is regularly expected to stay late to complete tasks . . . for other Section Leads. Her male DP-1550-4 comparators within the Telemetry Branch leave at the end of their workdays without any questions asked and are not held to the same standards or given the same level of responsibility.

Id.

Plaintiff received modest pay increases in 2013, 2014, 2015, and 2016, but still remained a DP-1550-4 (GS-12 equivalent). See id. at 7-9. In 2016, plaintiff elevated the conversation about her career progress to Mr. Robert Sowa, Mr. VanMeter's supervisor, who advised her to be more like one of her male co-workers if she wanted to advance.[2] See id. at 10.

In the timeframe relevant to the present case, plaintiff describes her duties, as follows:

> During 2016 and 2017, [p]laintiff continued to perform the IADS Lead role and SharePoint Lead role for the Telemetry Systems Branch. In early 2017, [p]laintiff was additionally assigned by her Section Lead to be responsible for the RTPS V Releases of software developed by the Telemetry Software Section (5.2.4.3.3). RTPS V Lead duties include gathering the requirements, documenting, building, testing, and coordinating for deployment of the new releases to the production systems. . . . [p]laintiffs' IADS support and RTPS V Releases are mission-critical and both fully affect all aircraft programs daily for all missions supported by RTPS.

Id.

---

[2]  Plaintiff alleges that this was the second time she was so advised—Mr. VanMeter also told her to be more like a male co-worker during her 2013 performance review. See ECF No. 1 at 7.

In January 2017, plaintiff received a pay increase, but again remained as a DP-1550-4 (GS-12 equivalent).  See id. at 11.  On August 7, 2017, she "initiated an informal administrative [Equal Employment Opportunity (EEO)] complaint with the Civil Rights office at ATR," alleging that "she was being subjected to gender-based pay disparity under the Equal Pay Act and a hostile work environment based on gender and pregnancy under Title VII."  Id. at 11-12.  Plaintiff and the agency attempted to settle the claims through mediation, but the effort was unsuccessful.  Id. at 12.

Following her performance review in December 2017, plaintiff remained a DP-1550-4 level employee, but her pay increase "finally reach[ed] GS-13 step 1."  See id.

In its initial motion for summary judgment, defendant argued that plaintiff cannot make a prima facie case for an EPA violation based on any of the three comparators as alleged in her complaint because, despite the fact that each of the four employees are included in the same broad classification, their "duties are not substantially equal."  ECF No. 32 at 30.  After considering the record evidence, the court concluded that a genuine issue of material fact existed as to whether plaintiff's duties were sufficiently similar to her alleged comparators' duties to establish a prima facie case.  See ECF No. 41 at 12.

Following this court's decision, defendant deposed plaintiff, and on June 23, 2021, defendant filed a renewed motion for summary judgment.  See ECF No. 56 at 8.  In its renewed motion, defendant argues that it is entitled to summary judgment on plaintiff's EPA claim for two reasons.  First, defendant contends that plaintiff has failed to make a prima facie showing of an EPA violation because the co-workers she offers as comparators "do not perform substantially equal job duties."  Id.  And second, defendant contends that:

> [e]ven if the [c]ourt finds [plaintiff's] job duties were substantially similar to those of the identified comparators or finds that material disputes of fact preclude finding that [plaintiff] performed job duties that were not substantially similar as the named comparators, summary judgment is still appropriate because the uncontroverted facts demonstrate that the salary disparity between [plaintiff] and the named comparators is the result of a gender-neutral merit system.

Id.

II.     Legal Standards

According to this court's rules, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).

A genuine dispute of material fact is one that could "affect the outcome" of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." Dairyland Power, 16 F.3d at 1202 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. Celotex, 477 U.S. at 324.

The Supreme Court of the United States has instructed that "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson, 477 U.S. at 247-48. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." Id. at 249 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." Dairyland Power, 16 F.3d at 1202 (citing Celotex, 477 U.S. at 323).

III.    Analysis

The EPA bars employers' discrimination against employees on the basis of sex. Specifically, it provides:

> No employer . . . shall discriminate, . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

The parties agree that plaintiff bears the burden of establishing a prima facie case under the EPA, which requires her to demonstrate that the agency paid "different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (internal quotation marks omitted); see ECF No. 56 at 30 (citing Corning, 417 U.S. at 195); ECF No. 59 at 33 (citing Corning, 417 U.S. at 195). Put another way, to carry her burden, plaintiff must identify a male comparator whose work was "substantially equal," when focusing on "the individuals' primary rather than incidental duties." Jordan v. United States, 122 Fed. Cl. 230, 241 (2015) (internal quotations omitted). "It is the job as a whole, not just selected aspects of it that must form the basis of the comparison." Ellison v. United States, 25 Cl. Ct. 481, 487 (1992) (citing Gunther v. Cnty. of Washington, 623 F.2d 1303, 1309 (9th Cir. 1979), aff'd, 452 U.S. 161 (1981)).

"Once plaintiff establishes her prima facie case, the burden shifts to defendant to demonstrate one of [the] four statutorily articulated affirmative defenses." Brooks v. United States, 101 Fed. Cl. 340, 344 (2011). If defendant demonstrates that payment was made pursuant to one of the four affirmative defenses, plaintiff can present evidence to rebut the affirmative defense. "At the summary judgment stage, this means evidence from which it may reasonably be inferred that the real factor behind wage differentials was not the identified 'factor other than sex.'" Behm v. United States, 68 Fed. Cl. 395, 400 (2005). Plaintiff's showing may be made either through evidence of an employer's "intent to discriminate on the basis of gender," or through circumstantial evidence that defendant's affirmative defense is pretextual. Id.

Here, plaintiff identifies three comparators: Mr. Quade, Mr. Menard, and Mr. Barry. See ECF No. 1 at 6. According to plaintiff, "[e]ach of these male co-workers is identically classified as a DP1550-4 computer scientist, yet have been compensated at the GS-13 equivalent level within the pay band DP-4 since the conversion to STRL if not earlier." Id. In its decision denying defendant's first motion for summary judgment, the court noted its difficulty in parsing the technical descriptions of each employees' duties, advising that "[i]n order to resolve this apparent [factual] dispute, the parties must present evidence that provides further explanation of each individual's duties. The court recognizes that the differences may be apparent to individuals steeped in the language

and environment of the ATR." ECF No. 41 at 12. To the court, however, a material part of the relevant evidence appeared contradictory. See id.

In an attempt to further explain the job duties at issue, defendant deposed plaintiff and filed a transcript of that deposition as an exhibit to its motion for summary judgment at bar. See ECF No. 56-1. The court has reviewed the transcript in detail, along with the parties' arguments regarding the sufficiency of the evidence in support of plaintiff's prima facie case. The precise contours of each employee's job and the manner in which those duties should be compared, nonetheless, remain somewhat opaque. The court observes that while it had plaintiff's deposition to consider, it only had affidavits from the alleged comparators, since no depositions were used to draw out certain details, as had occurred with plaintiff. Even assuming, however, that plaintiff has established a prima facie case, the court concludes that defendant has successfully asserted its affirmative defense, and that plaintiff has failed to rebut the defense. As such, plaintiff's claim cannot proceed.

In its motion, defendant explains the mechanics of the STRL pay system at length. See ECF No. 56 at 10-17. Defendant's description is supported by the STRL Manual, as well as seven affidavits submitted by individuals involved with implementing the STRL pay system. See id. (referring to the STRL Manual and the affidavits of Constance Carter, Dawn Gehrig, Katie Guy, Valerie Rooney, Robert Sowa, Daniel Torres, and Robert Vargo); see ECF No. 32-1 (defendant's appendix, which includes the STRL Manual and the affidavits).

Defendant argues that "[t]he STRL pay system is [a] gender-neutral merit system that requires an annual systematic evaluation of employees under organized and structured procedures and predetermined criteria that ultimately determines employees' annual salary increases." ECF No. 56 at 42. According to defendant "[b]ecause the 'record can only be read to show that the government's highly structured and regulated merit system, not gender, explains the pay disparity' between [plaintiff] and her comparators, summary judgment in [defendant's] favor is appropriate." Id. (quoting Thomas v. United States, 86 Fed. Cl. 633, 640 (2009)).

In response, plaintiff concedes that the STRL pay system is facially gender-neutral, but argues that defendant cannot rely on that fact as an affirmative defense because the system "could not function as intended without good data about [p]laintiff's actual duties or her actual performance of those duties, and without the pay pool giving fair consideration to those factors in assigning pay out points." ECF No. 59 at 45. Plaintiff also argues that Mr. VanMeter unfairly deprived her of opportunities to contest

her performance evaluations, and suggests that Mr. Quade was unfairly promoted more quickly than she was.  See id.

The problem for plaintiff is that while she argues that she was unfairly treated, she offers no evidence—only speculative assertions—that the reason for the alleged unfair treatment was rooted in sex discrimination.  In challenging the viability of defendant's affirmative defense, plaintiff refers to only two parts of the record in this case, which she has labeled "Facts 31-32."  ECF No. 59 at 45.  It appears to the court that plaintiff has broken down the statement of facts included in defendant's motion and assigned a number to each of what plaintiff considered to be a discrete fact.  See id. at 10-32.  Plaintiff then provided a response to each fact, indicating whether she disputed its contention.  See id.  Facts 31 and 32, as labeled by plaintiff, read as follows:

> 31.   Every year during the statute of limitations, Ms. Spellers received an annual salary increase and bonus that corresponded with her performance rating.  In 2015, 2016, and 2017, Ms. Spellers received a rating of 3 with 2 payout points, with corresponding salary increases, and in 2018, Ms. Spellers received a rating of 3 with 1 payout point.  Vargo Aff. ¶ 16.
>
> . . .
>
> 32.   Ms. Spellers never requested reconsideration of any of her ratings.  Vargo Aff. ¶ 17.

Id. at 19-20.

It is unclear to the court how either of these facts relate to plaintiff's allegation that she was discriminated against on the basis of her sex.  Plaintiff's responses to each fact are likewise unhelpful.  At most, plaintiff suggests that Mr. VanMeter failed to give her proper credit for her work.  See id. (noting that plaintiff's "annual ratings did not reflect her increased responsibility or workload" and did not "mention her leadership role or the fact that, like her male colleagues, she developed software applications and was a skilled programmer").  Plaintiff cites to various portions of her performance plans in support of these assertions.  See id. (citing 35-1 at 154-59; 163, 166, 168, 173-78, and 181-88).  Even assuming that plaintiff should have been credited for handling more responsibility, the failure to award such credit, on its own, does not indicate that plaintiff's sex influenced her evaluations.  As such, the scant evidence provided by plaintiff simply does not amount to "evidence from which it may reasonably be inferred that the real factor

behind wage differentials was <u>not</u> the identified 'factor other than sex.'"  <u>Behm</u>, 68 Fed. Cl. at 400 (emphasis in original).  And the court is unable to determine otherwise.

Because plaintiff acknowledges that the STRL pay system is facially gender-neutral when functioning as intended and with good data, <u>see</u> ECF No. 59 at 44-45, she has conceded the viability of defendant's affirmative defense.  She has failed, however, to present evidence sufficient to rebut that defense.  For these reasons, summary judgment in defendant's favor is appropriate.

IV.  Conclusion

Accordingly,

(1)  Defendant's motion for summary judgment, ECF No. 56, is **GRANTED**; and

(2)  The clerk's office is directed to **ENTER** final judgment for defendant **DISMISSING** plaintiff's complaint, with prejudice.

IT IS SO ORDERED.

<u>s/Patricia E. Campbell-Smith</u><br>
PATRICIA E. CAMPBELL-SMITH<br>
Judge